UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAKONG THAO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ANGELA SWARTHOUT, et al.,<br><br>    Defendants. | No. 2:21-cv-00731-DC-AC<br><br>ORDER GRANTING DEFENDANT CARRIE LOOK'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND DENYING AS MOOT MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)<br><br>(Doc. No. 80) |

This matter is before the court on Defendant Carrie Look's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and motion for judgment on the pleadings under Rule 12(c). (Doc. No. 80.) The pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 88.) For the reasons explained below, the court will grant Defendant Look's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) with leave to amend and deny Defendant Look's motion for judgment on the pleadings under Rule 12(c).

**BACKGROUND**

This case arises from the murder of Decedent Tou Thao by his cellmate Jose Negrete on September 5, 2019, in California State Prison Sacramento ("CSP Sacramento"). (Doc. No. 70 at

1

¶¶ 11, 61.) On April 23, 2021, Decedent's family members, ChaKong Thao[1], Kia Thao, Joy Thao, Bee Thao, Paul Thao, May Thao, and Jer Thao ("Plaintiffs") filed a civil rights complaint against Jeff Lynch, the warden of California State Prison Sacramento, and Doe Defendants 1–10. (Doc. No. 1.) On June 23, 2021, Plaintiffs filed a first amended complaint to add Dr. Angela Swarthout, PsyD, as a Defendant.[2] (Doc. No. 6.)

In the fall of 2022, Plaintiffs served a subpoena duces tecum to the custodian of records for the California Department of Corrections and Rehabilitation ("CDCR") and CSP Sacramento, seeking, among other things, "[a]ll documents showing the housing assignment of the deceased, Tou Thao, to Jose Negrete." (Doc. Nos. 45 at ¶ 3; 70 at ¶¶ 30, 47, 98, 150.) In response to that subpoena, on November 10, 2022, Defendant Carrie Look, a senior legal analyst with the California Department of Justice, Office of the Attorney General, signed an affidavit of service and provided Plaintiffs 2,138 pages of CDCR records. (Doc. No. 70 at ¶ 31.) Plaintiffs allege these CDCR records "did not include a copy of any records showing the name of the official who actually made the decision to approve the placement of inmate Thao with Negrete." (*Id.* at ¶ 31.)

In December 2022, Plaintiff served CDCR and CSP Sacramento with deposition notices and subpoenas of a person most knowledgeable in order to discover the identity of the involved individuals who made the housing assignment decision to place Tou Thao with Jose Negrete. (*See* Doc. No. 52.) On January 17, 2023, Defendant Swarthout filed a motion to quash the subpoenas, which the court denied because Defendant Swarthout lacked standing to challenge them. (Doc. Nos. 40, 58.) Plaintiffs allege they served a third subpoena to CDCR. (Doc. No. 70 at ¶ 104.) Plaintiffs state they had extensive meet and confer discussions with the Attorney General's Office and Deputy Attorney General William Buranich, and those discussions resulted in a compromise whereby a person-most-knowledgeable deposition would not occur if the Attorney General's Office provided a document showing who made the housing assignment to place Tou Thao with

---

[1] Defendant ChaKong Thao seeks relief individually and as an administrator of the Estate of Tou Thao. (Doc. No. 70 at ¶¶ 3–4.)

[2] On June 14, 2022, the court dismissed Plaintiff's claims against Defendant Jeff Lynch with leave to amend. (Doc. No. 30.) Because Plaintiffs did not timely file a second amended complaint, the court terminated Defendant Lynch from this action. (*See* Doc. No. 69 at 2.)

1   Jose Negrete. (*Id.*)

2       On June 2, 2023, Defendant Look emailed a document to Plaintiffs' counsel identifying

3   Defendant E. Altvatter as the official who made the decision on August 29, 2019, to house Tou

4   Thao with Jose Negrete. (*Id.* at ¶ 31.) Plaintiffs allege Defendant Look's email "ended up in

5   [Plaintiffs' counsel's] spam folder," though the email was re-sent to Plaintiff's counsel on

6   September 28, 2023. (*Id.*)

7       On November 22, 2023, Plaintiffs filed a motion for leave to file a second amended

8   complaint, to add new Defendants, including Defendant Look, additional facts, and causes of

9   actions. (Doc. No. 62.) The court granted Plaintiffs' motion on August 22, 2024, finding "leave to

10  amend [was] not futile because it [was] not 'patently obvious[] that the plaintiff[s] could not

11  prevail on the facts alleged[.]'" (*Id.* at 6.) (citing *Cohen v. Longshore*, 621 F.3d 1311, 1314–15

12  (10th Cir. 2010). On August 30, 2024, Plaintiffs filed the operative second amended complaint.

13  (Doc. No. 70.) Plaintiffs appear to raise the following claims against Defendant Look: (1) a claim

14  under 42 U.S.C. § 1983 based on a violation of the Fourteenth Amendment's substantive and

15  procedural Due Process Clause, (2) a § 1983 claim of deliberate indifference to Plaintiffs' rights

16  under the First Amendment to petition the government for redress of grievances, and (3)

17  violations of federal criminal statutes. (*Id.* at 34–61.) On October 24, 2024, Defendant Look filed

18  an answer to Plaintiffs' second amended complaint. (Doc. No. 78.)

19      On November 7, 2024, Defendant Look filed a motion to dismiss under Federal Rule of

20  Civil Procedure 12(b)(1) and motion for judgment on the pleadings under Rule 12(c). (Doc. No.

21  80.) On November 21, 2024, Plaintiffs filed an opposition to the motion and a request for judicial

22  notice in support of their opposition.[3] (Doc. Nos. 81–82.) On December 4, 2024, Defendant Look

---

[3] Plaintiffs ask the court to take judicial notice of the following documents: (1) documents under seal with the court, (2) the court's order granting a motion for leave to amend, (3) a publication of the State of California concerning the duties and obligations of the California State Attorney General's Office, and (4) a press release from the U.S. Attorney in Alabama concerning a civil rights case. (Doc Nos. 81 at 10–11; 82.) The court declines to take notice of documents already part of the record of the case. *See Perez v. DNC Parks & Resorts at Sequoia*, No. 19-cv-00484-DAD-SAB, 2020 WL 4344911, at *2 (E.D. Cal. July 29, 2020) (declining to take judicial notice of the parties' joint status report because the report was already part of the record in the case). Further, the court will decline to take notice of Plaintiff's submission of the State of California's

filed a reply to Plaintiffs' opposition. (Doc. No. 87.)

## LEGAL STANDARD[4]

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim based on a lack of subject matter jurisdiction. There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack and a factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the allegations in the complaint, asserting they are insufficient on their face to invoke federal jurisdiction. *Id*. Under a facial attack, a presumption of truthfulness attaches to the allegations in the complaint, and the court is limited to the four corners of the pleadings in determining whether it has jurisdiction over the matter. *Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

## DISCUSSION

In her motion, Defendant Look asserts Plaintiffs' claims against her should be dismissed with prejudice because Plaintiffs lack standing, she is entitled to absolute and qualified immunity, and Plaintiffs fail to state any claim for relief. Because the court finds Plaintiffs lack standing to bring their claims against Defendant Look, the court need not address the parties' remaining arguments.

**A.    Article III Standing**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 (1983). To satisfy the case or controversy requirement, a plaintiff must show that: (1) he has suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish an injury-in-fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a "concrete and

---

publication or the press release from the U.S. Attorney in Alabama, as neither document is relevant to the court's analysis herein.

[4] The court does not address the legal standard under Rule 12(c) because the court finds Plaintiffs lack standing under Rule 12(b)(1).

1 particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504
2 U.S. at 560–61. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*,
3 578 U.S. at 339 (citing Black's Law Dictionary 506 (10th ed. 2014)). Further, "a plaintiff must
4 demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S.
5 332, 352 (2006).

6       Defendant Look argues Plaintiffs lack Article III standing with regard to their claims
7 brought against her because her delay in providing the document identifying the official that
8 authorized Negrete's housing assignment caused Plaintiffs "no 'physical, monetary, or cognizable
9 intangible harm traditionally recognized as providing a basis for a lawsuit in American courts.'"
10 (Doc. No. 70 at 5) (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413, 427 (2021)). In response,
11 Plaintiffs contend Defendant Look admitted subject matter jurisdiction in her answer and that any
12 motion under Rule 12(b)(1) must be denied. (Doc. No. 81 at 24-25).

13       In making this argument, Plaintiffs confuse the concepts of subject matter jurisdiction and
14 standing. Subject matter jurisdiction "refers to a tribunal's power to hear a case." *Adkison v.*
15 *C.I.R.*, 592 F.3d 1050, 1055 (9th Cir. 2010). Whereas standing is a threshold component of the
16 court's subject matter jurisdiction, if a plaintiff lacks standing on a claim, the court lacks
17 jurisdiction to adjudicate that claim. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.
18 2004). Thus, a court can possess subject matter jurisdiction over a case and, at the same time, lack
19 jurisdiction over claims that lack standing. *See Iqbal v. Blinken*, No. 23-cv-01299-KJM-KJN,
20 2023 WL 7418353, at *4 (E.D. Cal. Nov. 9, 2023) (possessing subject matter jurisdiction over the
21 case despite dismissing two claims for lack of standing).

22       In her answer, Defendant Look admits the court has the authority to hear this case. (*See*
23 Doc. No. 78 at 1) ("Defendant admits this [c]ourt has subject matter jurisdiction . . .") Indeed, the
24 court possesses subject matter jurisdiction because Plaintiffs raise constitutional claims against
25 Defendants Angela Swarthout, Josh Bullard, Norman Fujiwara, Kevin Steele and/or the Estate of
26 Kevin Steele, and E. Altvatter. (Doc. No. 70 at ¶¶ 38–89.) Defendant Look also expressly asserts
27 as an affirmative defense in her answer that Plaintiffs lack Article III standing. (Doc. No. 78 at 6.)
28       Even if Defendant Look had not raised the issue of Article III standing in her answer,

5

1   "'federal courts have a duty to raise, sua sponte questions of standing before addressing the
2   merits' of any claim." *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (citing *Steel Co. v.*
3   *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *see also* Fed. R. Civ. P. 12(h)(3) ("the court
4   must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction.").
5   Therefore, independent of Defendant Look's pleadings, it is Plaintiffs' burden to sufficiently
6   allege standing and it is the court's duty to assess whether they have in fact done so.

7     Plaintiffs also appear to argue they possess standing against Defendant Look because the
8   court granted Plaintiffs leave to file their second amended complaint, and therefore the court
9   impliedly found Plaintiffs' claims against Defendant Look were not futile. (Doc. No. 81 at 25.)
10  Plaintiffs' argument is not persuasive, however, because Plaintiffs provide no authority for the
11  proposition that granting leave to amend under Federal Rule of Civil Procedure 15 relieves a
12  plaintiff from their burden to demonstrate they have standing to bring their claims.

13    Next, Plaintiffs contend in conclusory fashion they have standing against Defendant Look
14  because they were damaged by Defendant Look's alleged conduct and are "aggrieved in fact."
15  (*Id.* at 20–26.) Rather than specify the conduct they contend aggrieved them, Plaintiffs merely
16  reference other sections of their opposition brief and their second amended complaint, and invite
17  the court to review those sections, which include summaries of their allegations against
18  Defendant Look and their efforts to secure a criminal prosecution of correctional and medical
19  staff. (Doc. Nos. 70 at ¶¶ 135–61; 81 at 5–9, 20–26.) However, it is not the court's responsibility
20  to sift through a party's pleading and/or brief to determine what argument is being made. *See*
21  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("As the Seventh
22  Circuit observed in its now famous maxim, '[j]udges are not like pigs, hunting for truffles buried
23  in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Moreover,
24  Plaintiffs' second amended complaint and opposition are disorganized, difficult to understand,
25  and contain irrelevant material. Even after reviewing the allegations in Plaintiffs' second
26  amended complaint and inferring Plaintiffs' arguments, the court is unable to identify what
27  concrete and particularized injury they allegedly suffered from Defendant Look's delay in
28  producing the relevant document. Plaintiffs admit they are in possession of the relevant document

1  and have filed suit against Defendant Altvatter in this court. Plaintiffs have not demonstrated they
2  have been prejudiced by the delay in any way on their underlying claims against Defendant
3  Altvatter. Moreover, Plaintiffs admit they were able to provide the relevant records to local
4  police, the Sheriff's Department, CDCR Internal Affairs, the Federal Bureau of Investigations,
5  and the United States Attorney's Office. (Doc. 81 at 23.)  Plaintiffs' allegations amount to mere
6  speculation that Defendant Look's alleged delay somehow affected any efforts to criminally
7  prosecute correctional and medical staff members.
8        Accordingly, the court finds Plaintiffs lack Article III standing against Defendant Look.
9  **B.**     **Survival Standing**
10        In her motion, Defendant Look also argues that Plaintiffs lack survival standing to bring
11  claims on behalf of decedent Tou Thao against her. Specifically, Plaintiffs bring claims against
12  Defendant Look on behalf of the decedent Tou Thao for actions Defendant Look allegedly took
13  over three years after the decedent Tou Thao's death. (Doc. No. 70 at ¶ 90.) Defendant Look
14  contends based on that sequence of events, Plaintiffs lack standing under California law to bring
15  these claims. (Doc. No. 80 at 12–13.)
16        Survivors of an individual may bring claims arising under 42 U.S.C. § 1983 "if the
17  relevant state's law authorizes a survival action." *Hayes v. County of San Diego*, 736 F.3d 1223,
18  1228 (9th Cir. 2013) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369
19  (9th Cir. 1998)). Under California's survival statute, "a cause of action for or against a person is
20  not lost by reason of the person's death but survives subject to the applicable limitations period."
21  Cal. Civ. Proc. Code § 377.20; *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1052 (9th Cir.
22  2018). A decedent's successor in interest has standing to bring any causes of action that the
23  decedent himself could have asserted. Cal. Civ. Proc. Code § 377.30; *see Davis v. Bender*
24  *Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994) ("In a survival action, a decedent's
25  estate may recover damages on behalf of the decedent for injuries that the decedent has
26  sustained.").
27        Plaintiffs argue they have standing to pursue this action against Defendant Look because
28  they are the siblings of the decedent. (Doc. No. 81 at 26–29.) In support of their argument,

1 Plaintiffs cite California's wrongful death statute, interstate succession statutes, and prior court orders, for the proposition that decedent Tou Thao's siblings have standing to pursue this action. (*Id.*) The court finds Plaintiffs' argument unavailing. The survivor statutes do not create "new causes of action that vests" in the decedent's successors in interest. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (2006). Instead, it "merely prevent[s] the abatement of the cause of action of the injured person and provide[s] for its enforcement by or against the personal representative of the deceased." *Id*. (quoting *Grant v. McAuliffe*, 41 Cal. 2d 859, 865 (1953)). Notably, "a complete cause of action need not exist at the time of the injured party's death in order for rights to survive which later may mature in an actionable claim." *Carr v. Progressive Cas. Ins. Co.*, 152 Cal. App. 3d 881, 891 (1984). However, "the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived . . ." Cal. Civ. Proc. Code § 377.34.

Here, the relevant question is whether the decedent himself could have asserted the claims against Defendant Look, but for his death. The court readily finds the claims against Defendant Look could not and did not exist before the decedent's death. Nor is this an instance where the cause of action simply failed to accrue before the decedent's death. Therefore, the court concludes Plaintiffs do not have survival standing to assert claims against Defendant Look on behalf of decedent Tou Thao.

In sum, because Plaintiffs lack standing under Article III and lack survival standing, the court will grant Defendant Look's motion to dismiss Plaintiffs' claims brought against her.

**C.   Leave to Amend**

Plaintiffs ask the court to grant leave to amend if the court determines there are any deficiencies in the complaint. (Doc. No. 81 at 24.) Generally, Rule 15 provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(2). However, district courts are only required to grant leave to amend if a complaint can be saved. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). "Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Id*. When a complaint cannot be cured by additional facts, leave to amend

8

need not be provided. *Doe v. United States*, 58 F.3d 494, 397 (9th Cir. 1995).

While the court is skeptical that Plaintiffs will be able to allege additional facts to establish standing to bring their claims against Defendant Look, the court will nevertheless grant Plaintiffs an opportunity to amend their allegations against Defendant Look because Plaintiffs have not yet had an opportunity to do so, and the Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

## CONCLUSION

For the reasons explained above:

1. Defendant Carrie Look's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (Doc. No. 80) is granted, with leave to amend;
2. Defendant Carrie Look' motion for judgment on the pleadings under Rule 12(c) is denied as moot;
3. Within fourteen (14) days from the date of entry of this order, Plaintiffs shall file a third amended complaint to amend their allegations against Defendant Look, or alternatively, a notice of their intent to not file a third amended complaint; and
4. If Plaintiffs do not file a third amended complaint, the court will dismiss Plaintiffs' claims brought against Defendant Look without leave to amend.

IT IS SO ORDERED.

Dated:   **December 27, 2024**

Dena Coggins
United States District Judge

9